UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

MARY ELIZABETH SHARP,                )
                                      )
                                      )   Civil Action No. 5:07-362-JMH
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
                                      )   **MEMORANDUM OPINION AND ORDER**
EPHRAIM MCDOWELL REGIONAL             )
MEDICAL CENTER, INC.,                 )
                                      )
        Defendant.                    )
                                      )

**        **        **        **        **

     This matter is before the Court on Defendant's Motion for
Summary Judgment [Record No. 29].   The matter has been fully
briefed and is now ripe for review.   In her Amended Complaint
[Record No. 11], Plaintiff Mary Elizabeth Sharp ("Sharp" or
"Plaintiff") claims that Defendant Ephraim McDowell Regional
Medical Center, Inc. ("EMRMC" or "Defendant") paid her less than
her male counterparts, in violation of the Equal Pay Act, 29 U.S.C.
§§ 206(d) ("EPA"), Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e *et seq.* ("Title VII"), and the Kentucky Civil Rights
Act ("KCRA").   Defendant moved for summary judgment on each of
Plaintiff's claims.

## I.  BACKGROUND

### A.  Plaintiff's Employment History

     On November 7, 2001, Plaintiff applied for a position as a

radiologic technologist ("rad tech") with Ephraim McDowell Health. (Application for employment, Record No. 29, Ex. 10.)[1]  At that time, she was employed as a rad tech at Garrard County Hospital, earning $15.50 per hour.  (*Id.*)  On her application for employment with Ephraim McDowell Health, Plaintiff indicated that she received her degree from Good Samaritan Hospital in 1982 and provided her rad tech license number.  Under "Employment History," Plaintiff listed the following employers, job titles, and length of employment: Garrard County Hospital, rad tech, employed in November 2000 through the date of the application, November 7, 2001; Bluegrass Mobile Homes, sales job, employed from January 1996 until November 2000; Dr. Charles Crase, secretary, employed from August 1995 until January 1996; EMRMC, rad tech, employed from January 1992 until August 1995.  (*Id.*)

On January 14, 2002, Plaintiff was hired by Danville Family Physicians, an affiliate of Ephraim McDowell Health, as an x-ray technician, a grade 11A position.  The base rate for the position was $13.20, but after being credited with "7+" years of experience, Plaintiff's starting salary was $16.50.  (Ex. 11 at 1.)  Plaintiff received her yearly economic adjustments in January 2003 and 2004, increasing her pay to $16.83 and $17.17, respectively, which placed

---

[1] Unless otherwise stated, all Exhibit numbers refer to Record No. 29, Defendant's Motion for Summary Judgment.

her pay in the third quartile of grade 11A.[2]

On February 8, 2004, Plaintiff transferred to Fort Logan Hospital, a recently acquired affiliate of Ephraim McDowell Health, as a grade 12 rad tech/CT tech. (*Id.* at 4.) At the time of her transfer, Plaintiff was earning $17.17 per hour, which was one step below the midpoint for grade 12 at Fort Logan Hospital. Carl Metz, Vice President of Human Resources at Ephraim McDowell Health, testified that while Sharp had enough experience as a rad tech to place her salary above the midpoint of grade 11A, she did not have sufficient experience performing CT scans to place her salary above the midpoint of grade 12; therefore, her pay remained at $17.17 per hour upon her transfer to Fort Logan Hospital. (Metz Dep., Ex. 7 at 34.) On January 9, 2005, Plaintiff received a market adjustment of $1.05 per hour, raising her pay to $18.22 per hour, as a result of merging Fort Logan's salary ranges with those of Ephraim McDowell Health. (*Id.* at 31.)

In April 2005, Plaintiff applied for a CT tech position at Ephraim McDowell Diagnostic Center ("EMDC") so that she might be able to "work normal hours." (Pl. Dep., Ex. 1 at 34.) Plaintiff was hired for the position and was laterally transferred from Fort Logan Hospital to EMDC. Because the position was a lateral

---

[2]  Until 2009, when annual raises were tied to specific performance ratings, employees "were provided annual raises based on a nondiscretionary across the board economic adjustment." (Metz Aff., Ex. 5 at 2.)

transfer - from a grade 12 CT tech at one facility to a grade 12 CT tech at another facility - it was determined that no change in pay was warranted.  (Mayes Dep., Ex. 13, ¶ 2.)

On November 7, 2006, after receiving verbal counseling, Plaintiff was issued two final written warnings for "ongoing antagonistic behavior" and excessive absences.  (Ex. 16.)  In accordance with Ephraim McDowell Health's Associate Guidelines Manual, which Plaintiff acknowledged receiving, she was ineligible for a pay increase for the next twelve months.  (Ex. 12 at 4.) Plaintiff's final written warnings expired in November 2007, and in January 2008 she received her annual economic adjustment, along with the adjustment she would have received in 2007 but for her final written warnings.  Plaintiff's new hourly rate was $20.79, placing her salary above the midpoint in grade 12.  (Ex. 11 at 3; Ex. 6 at 6.)  In 2009, EMRMC began to utilize a performance based compensation system instead of across the board economic adjustments.  Under the performance based system, Plaintiff's performance rating corresponded to a 3.85% increase in pay, making her hourly rate $21.59.  (Pl. Dep., Ex. 1 at 41; Ex. 9; Ex. 11 at 5.)

In March of 2007 Plaintiff began to question whether she was being paid at the appropriate rate, however, she did not file a formal complaint or grievance with Defendant.  On October 18, 2007, Plaintiff filed an EEOC charge of discrimination against Defendant,

4

alleging sex discrimination and retaliation.  On October 29, 2007, during the pendency of the EEOC charge, Plaintiff filed the instant Complaint.  The instant action was stayed until the conclusion of the EEOC investigation.

On June 13, 2008, the EEOC terminated Plaintiff's charge and issued a Notice of Right to Sue.  The stay of the instant matter was lifted on September 9, 2008.  On April 1, 2009, Plaintiff filed an Agreed Order of Dismissal of her gender-based failure to promote and retaliation claims [Record No. 21].  The Court so ordered on April 2, 2009 [Record No. 22].  Defendant has now moved for summary judgment on Plaintiff's remaining gender-based pay discrimination claims under the EPA, Title VII, and the KCRA.

**B.  EMRMC's Compensation System**

Each job within the Ephraim McDowell Health system is assigned a pay grade, or range.  The pay grade is determined by market conditions and what a particular position has historically paid. (Metz Aff., Ex. 5 at ¶ 2.)  Currently, all CT techs are classified as grade 12.  Where an individual is placed within the grade range is determined by their education and experience, although factors such as additional skill sets and previous salary can also be considered.  (Metz Dep., Ex. 7 at 14-15.)  In her response to Defendant's revised concise statement of fact, Plaintiff agrees that, "[f]or the purpose of ruling on Defendant's Motion for Summary Judgment, Plaintiff does not dispute that Defendant's

salary range calculation is intended to set employee pay primarily based on education and job experience." (Record No. 41 at 2.)  As a general matter, an individual with seven to ten years of experience in a given position is considered to have reached the market average, or the midpoint of the pay grade.  (Metz Dep., Ex. 7 at 16-17.)

## II.  STANDARD OF REVIEW

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden to show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial.  *Id.* at 325.  The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law.  *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the court's function is not to weigh the evidence, but to decide whether there

are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  ANALYSIS

**A.  Equal Pay Act**

The EPA prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. *See* 29 U.S.C. § 206(d)(1). In order to establish a prima facie case under the EPA, a plaintiff must demonstrate that an employer pays members of the opposite sex more for work that requires "equal skill, effort, and responsibility,

7

and which [is] performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). "Equal work does not require that the jobs be identical, but only that there exist substantial equality of skill, effort, responsibility and working conditions." *Kovacevich v. Kent State University,* 224 F.3d 806, 826 (6th Cir. 2000)(internal citations and quotations omitted). In determining whether a comparator is appropriate for the purpose of establishing a plaintiff's prima facie case under the EPA, the "focus is on actual job requirements and duties, rather than job classifications or titles." *Beck-Wilson v. Principi*, 441 F.3d 353, 362 (6th Cir. 2006). Unlike the proof required on a claim under Title VII, "proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." *Beck-Wilson,* 441 F.3d at 360.

Once the plaintiff establishes a prima facie case, the defendant must prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *See* 29 U.S.C. § 206(d)(1); *Corning Glass Works*, 417 U.S. at 196-97.

### 1. Plaintiff's prima facie case

In order to establish her prima facie case, Plaintiff must identify male employees who perform substantially equal work for greater pay. *Id.* at 195. "[T]he comparison at the prima facie stage is of the jobs and not the employees." *Beck-Wilson*, 441 F.3d at 363. For the reasons that follow, Plaintiff has failed to identify any male employees who perform work that is substantially equal to her own, but for greater pay.

Upon being asked during her deposition which males she claims perform equal work for greater pay, Plaintiff responded with the names of Mark Murphy, Barney Roper, Mike Davis, and Shannon Catron. (Pl's. Dep., Ex. 1 at 87). Accordingly, in its motion for summary judgment, Defendant addressed these four men who were proposed by Plaintiff as comparators.

### a. Davis and Catron

Defendant argues that Mike Davis and Shannon Catron are not proper comparators because, as MRI techs, they have greater job duties than Plaintiff, who is a CT tech. The parties agree that advanced training is necessary to perform MRIs, and that Plaintiff has not had such training. By failing to respond to Defendant's argument, Plaintiff concedes that Davis and Catron are not proper comparators.

### b. Murphy

Defendant also argues that Mark Murphy is not a proper

9

comparator because much like Davis and Catron, Murphy's duties include performing MRIs, a responsibility that requires greater skill than that required of a CT tech.  Plaintiff concedes that Murphy performs MRIs and she does not. (Pl.'s Dep., Ex. 1 at 16).  While Murphy's personnel records may cause some confusion because he is currently listed as a CT tech (Ex. 24 at 5), Robyn Pulliam, diagnostic department director, explains that Murphy is classified as a CT tech for budgetary reasons because he and Davis both perform MRIs and CTs, yet there is no job code for a MRI/CT tech, so Davis was assigned the MRI classification and Murphy the CT classification simply to appropriately budget staffing. (Ex. 20 at 38).  While Murphy's job title was changed from MRI tech to CT tech for budgeting purposes, (Ex. 24 at 5), the testimony of his supervisors Julie Hilbert (Ex. 14 at 13) and Robyn Pulliam (Ex. 20 at 18), along with Plaintiff's own testimony, makes clear that Murphy continues to perform MRIs.  Plaintiff's work is not substantially equal to Murphy's work, rendering Murphy an improper comparator.

### c. Roper

Defendant also correctly argues that Barney Roper does not perform work that is substantially equal to Plaintiff's work because they work at different establishments.  Roper works as a CT tech at EMRMC, a 24-hour, acute care hospital, while Plaintiff is a CT tech at EMDC, an outpatient diagnostic center open Monday through Friday from 7:00 a.m. to 7:00 p.m.  EMRMC treats a higher

volume of patients with greater acuity, while EMDC has a smaller volume of patients with lesser acuity.  Additionally, while both EMRMC and EMDC both offer CT scans, EMDC only offers a 16-slice scanner, while CT techs at EMRMC operate both a 4-slice scanner and a 64-slice scanner which requires an additional week of training.

The EPA only applies to individuals working within the same establishment.  29 U.S.C. § 206(d)(1).  Establishment "refers to a distinct physical place of business rather than to an entire business or "enterprise" which may include several separate places of business.  Accordingly, each physically separate place of business is ordinarily considered a separate establishment."  29 C.F.R. § 1620.9(a).  While EMRMC and EMDC are both subsidiaries of parent corporation Ephraim McDowell Health, Inc., because EMRMC and EMDC are physically separate places of business, they are considered different establishments for the purposes of the EPA.  Contrary to Plaintiff's argument, there are no "unusual circumstances" as described in 29 C.F.R. § 1620.9(b) which would dictate that EMRMC and EMDC be considered the same establishment.  29 C.F.R. § 1620.9 provides:

> [U]nusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment.  For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions.  Barring unusual circumstances, however, the term "establishment" will be applied as described in paragraph (a) of this section.

11

29 C.F.R. § 1620.9(b).

While Ephraim McDowell Health subsidiaries have a common pay structure (Metz Aff., Ex. 5 at 1), this commonality is not sufficient to overcome the general presumption that physically distinct businesses are considered separate establishments for purposes of the EPA. Here, there is no evidence that EMRMC and EMDC employees frequently interchange work locations. Additionally, CT techs at EMRMC operate a more advanced scanner than CT techs at EMDC, and EMRMC CT techs must cover a 24 hour, 7 day a week facility, rendering those working conditions dissimilar from EMDC's 16-slice scanner and 12 hour, 5 day work weeks. *See* 29 C.F.R. § 1620.9(b). Additionally, CT techs at EMRMC are supervised by Patricia Kendrick, while Julie Hilbert supervises CT techs at EMDC. Plaintiff has not presented unusual circumstances overcoming the general principle that physically distinct entities are treated as separate establishments.

### d. Lewis, McKenzie, and Dye

In her response in opposition to Defendant's motion for summary judgment, Plaintiff also identifies Paul Lewis, Joseph McKenzie, and James Dye, CT techs at Fort Logan Hospital, as male employees who perform equal work for greater pay. Defendant replied that because Plaintiff had not previously identified these individuals in response to interrogatories or in her deposition, that the Court should not consider whether these individuals are proper comparators. Because Lewis, McKenzie, and Dye work at

12

different establishments than Plaintiff, they are not proper comparators and Defendant's concerns should be allayed.

While Fort Logan Hospital, where Lewis, McKenzie, and Dye are employed, and EMDC, where Plaintiff is employed, are both subsidiaries of Ephraim McDowell Health, there are no unusual circumstances requiring that they be considered the same establishment for purposes of the EPA. *See* 29 C.F.R. § 1620.9(b). While Fort Logan Hospital and EMDC have a common salary range, pay decisions for Fort Logan Hospital are made by Ruth Smith while pay decisions at EMDC are made by Robyn Pulliam. There is no evidence that EMDC and Fort Logan Hospital employees frequently interchange work locations, and Julie Hilbert supervises CT techs at EMDC, while CT techs at Fort Logan Hospital report to Tim Taylor. Accordingly, Lewis, McKenzie, and Dye work at a different establishment and are not suitable comparators.

Because Plaintiff has failed to identify male employees who perform substantially equal work for greater pay, she has not established her prima facie case.

**2. Affirmative defenses**

Assuming, *arguendo,* that the comparators proposed by Plaintiff - Roper, Murphy, Lewis, McKenzie, and Dye - were performing substantially equal work at the same establishment as Plaintiff, Defendant has put forth substantial evidence from which a reasonable juror would necessarily conclude that any wage disparity

13

results from a factor other than sex.[3] *See* 29 U.S.C. § 206(d)(1);
*see Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005) (citing
*EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992)).
Specifically, any disparity between Plaintiff's rate of pay and the
rates of pay of those individuals she has offered as comparators is
attributed to their respective levels of education and experience.
"A wage differential based on education or experience is a factor
other than sex for purposes of the Equal Pay Act." *Balmer,* 423
F.3d at 612 (citing *Hutchins v. Int'l Bhd. of Teamsters,* 177 F.3d
1076, 1081 (8th Cir. 1999)).   The Court will go on to compare
Plaintiff's qualifications and background with those of the
individuals she proposed as comparators.

### a. Plaintiff

Plaintiff's application for employment with Ephraim McDowell
Health, completed on November 7, 2001, lists as relevant job
experience three and one-half years as a rad tech at EMRMC and one
year as a rad tech at Garrard County Hospital, for a total of four

---

[3]   Contrary to Plaintiff's contention, Defendant did not
waive the affirmative defenses set forth at 29 U.S.C. §
206(d)(1).  Defendant's Answer clearly states that "All actions
of the Defendant, taken with regard to the Plaintiff, were for
legitimate, nondiscriminatory reasons unrelated to Plaintiff's
gender.  (Def.'s Answer, Record No. 12 ¶ 26.)  While the exact
phrase, "any factor other than sex," the affirmative defense
Defendant relies upon, is not found in the Answer, an affirmative
defense may be pleaded in general terms, so long as it puts the
plaintiff on notice of the nature of the defense.  *See Lawrence
v. Chabot*, 2006 WL 1342316, *12 (6th Cir. 2006).  Defendant's
Answer was sufficient to put Plaintiff on notice that Defendant
intended to assert the affirmative defenses of 29 U.S.C. §
206(d)(1).

14

and one-half years.  (Ex. 10 at 3.)  In addition to this relevant experience, of which Defendant was certainly aware, in calculating her relevant experience, Plaintiff now includes the following approximately ten years of experience:  six years at "several different hospitals as a Radiology Tech" from 1982 to 1988; one year at James B. Haggin Memorial Hospital as a rad tech from 1988-1989; one year at Ireland Army Hospital as a rad tech and student clinical coordinator from 1989; and another two years at James B. Haggin Hospital from 1990-1992.  (Record No. 41 at 8.)  There is no evidence, and in fact Plaintiff does not argue, that Defendant was aware of the approximately ten years of relevant experience not included on Plaintiff's application at the time it calculated her pay rate, or at any time prior to the institution of this litigation.  Even so, a comparison of Plaintiff's education, experience, and job responsibilities demonstrate that a factor other than sex explains the wage differentials.

Plaintiff graduated from Good Samaritan Hospital School of Radiologic Technology in 1982.  In 2009, at the time the instant motion for summary judgment was filed, she had slightly over 21 years of experience in the diagnostic field, having left the field for five years from 1995-2000.  (*Id.* at 9.)  Upon her transfer from Danville Family Physicians to Fort Logan Hospital in 2004, Plaintiff's job classification changed from a grade 11 x-ray tech to a grade 12 CT tech, a classification that continued upon her transfer to EMDC.  (*Id.*)  In 2008 Plaintiff was earning $20.79 per

hour, and in 2009, Plaintiff's rate of pay increased to $21.59 per hour. (Ex. 11.)

### b. Roper

Barney Roper received his radiologic technology degree in 1969. (Ex. 21 at 2.) In 2009, he had 40 years of experience in the diagnostic field, including experience with angio procedures and nearly fourteen years as a chief tech. (*Id.* at 3.) Roper was hired by EMRMC in 1998 as a special procedures tech. (*Id.* at 8.) In 2002 Roper's position changed to CT tech. (*Id.* at 9.) Roper earned $25.24 per hour in 2008. (*Id.*) In 2009, Roper's pay increased to $26.21 per hour. (Ex. 11.) Roper clearly has more experience than Plaintiff, and she admits as much in her response to Defendant's motion for summary judgment. (Record No. 33 at 23.) Based upon the evidence, a reasonable juror must conclude that Roper is paid more than Plaintiff because of his greater experience, a factor other than sex.

### c. Murphy

Mark Murphy graduated with a degree in radiology in 1990. (Ex. 24 at 1.) He has consistently worked in the diagnostic field, and in 2009 he had 19 years of experience, over 17 of which were with Defendant, EMRMC. (*Id.*) In 2002, Murphy's title changed from x-ray tech to CT tech. (*Id.* at 3.) In 2004, Murphy advanced to the position of MRI tech. (*Id.* at 4.) While Murphy's job classification has since changed back to CT tech, as discussed,

16

*supra,* this change was merely but budgetary reasons, as Murphy continues to perform MRIs on a regular basis.  Murphy earned $21.46 per hour in 2008 (Ex. 24), and his rate of pay increased to $22.16 per hour in 2009. (Ex. 11 at 6.)  Although Murphy received his radiology degree eight years after Plaintiff, he has only two years less experience in the diagnostic field, as Plaintiff left the field for a number of years.  Murphy was classified as a CT tech nearly two years before Plaintiff, and has, as of the current time, been a MRI tech for nearly six years, while Plaintiff does not possess the training or experience to perform MRIs.  Even when viewed in a light most favorable to Plaintiff, a reasonable juror must conclude that the small wage differential between Plaintiff and Murphy is attributable to Murphy's greater experience and training as a CT and MRI tech - factors other than sex.

### d. Dye

James Dye was hired as a CT tech at Fort Logan Hospital in April 2003. (Record No. 33, Ex. 15.)  Dye received his radiology degree in 1998 and has worked in the diagnostic field since that time.  Prior to his employment at Fort Logan Hospital, Dye was a CT tech at Lake Cumberland Hospital, a position he had held since 2000.  On his position interest fact sheet, Dye indicated that he expected a pay rate of $17.67, somewhat lower than the $17.87 per hour he earned at Lake Cumberland Hospital, and that was in fact his starting pay rate at Fort Logan Hospital in 2003. (Record No. 37, Ex. E; Record No. 33, Ex. 15.)  Dye earned $20.77 per hour in

2008, slightly less than Sharp's hourly rate of $20.79. (Record No. 33, Ex. 15.) Dye has four years more experience as a CT tech than does Plaintiff, and had a higher salary prior to his employment with Fort Logan Hospital. There is no genuine issue that factors other than sex – greater experience and higher salary history – explain why Dye's starting salary as a CT tech at Fort Logan Hospital was $17.67, while Plaintiff's starting salary was $17.17. *See Balmer*, 423 F.3d at 612 ("Consideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity."). The Court also notes that while Dye's starting salary was slightly greater than Plaintiff's, Plaintiff currently earns more per hour than Dye.

### e. Lewis

Paul Lewis received his radiology degree in 1991 and has worked continuously in the diagnostic field, with extensive management experience, since that time. (Record No. 33, Ex. 17.) Prior to his employment at Fort Logan Hospital as a CT tech, Lewis was the director of radiology at Garrard County Hospital from January 2001 until September 2003, earning $22.57 per hour. (*Id.*) Lewis was also the director of radiology at Jane Crawford Hospital from October 1996 until January 1998, and at Columbia HCA from November 1994 until August 1996, where his duties included the supervision of thirteen urgent treatment centers. (*Id.*) Lewis was hired as a CT tech at Fort Logan Hospital in 2003, earning $18.50

18

per hour.  In 2008, Lewis earned $21.50 per hour.  While Plaintiff may have received her radiology degree several years prior to Lewis, Lewis's extensive management experience in the diagnostic field and his prior salary - factors other than sex  - commanded a higher rate of pay.

### f. McKenzie

Similarly, Joseph McKenzie received his radiology degree in 1992 and has consistently worked in the diagnostic field since that time.  (Record No. 33, Ex. 16.)  McKenzie has worked as a CT tech since 2003, and also has experience as a clinical instructor. (*Id.*)  In 2005, Fort Logan Hospital hired McKenzie as a CT tech, where he earned $18.50 per hour, slightly more than Plaintiff, who was earning $18.22 at the time.  (*Id.*)  While after the institution of this litigation, Plaintiff professed CT experience prior to her designation as a CT tech at Fort Logan Hospital in 2004, Plaintiff was not classified as a CT tech until 2004.[4]  At the time he was hired as a CT tech at Fort Logan Hospital, McKenzie had been a CT tech for one year longer than Plaintiff.  McKenzie's greater experience as a CT tech is a factor other than sex which clearly explains the pay differential.

Defendant has presented substantial evidence that the wage

---

[4]  On Plaintiff's application for employment with Ephraim McDowell Health, the logical place for one to detail all relevant experience, Plaintiff indicated that when working in the diagnostic field, her job had always been that of a rad tech. (Ex. 10.)

disparities between Plaintiff and the individuals she proposed as comparators were based on a factor other than sex.  Plaintiff has failed to produce evidence creating a triable issue of fact that the reasons proffered by Defendant are pretextual.  *See Balmer*, 423 F.3d at 613.   Accordingly, Defendant will be granted summary judgment on Plaintiff's claims under the Equal Pay Act.

**B.   Title VII**

Title VII, 42 U.S.C. § 2000e-2(a)(1), states in pertinent part: "It shall be unlawful for an employer.... to discriminate against any individual with respect to his compensation ... because of such individual's race [or] ... sex...."   42 U.S.C. § 2000e-2(a)(1).  Because disparate pay claims are often brought under both the EPA and Title VII, there has developed within this Circuit a body of law which instructs the trial court regarding the handling of these similar claims.   The Sixth Circuit Court of Appeals has described the interplay between the EPA and Title VII as follows:

> Generally, a Title VII claim of wage discrimination parallels that of an EPA violation. Nevertheless, due to the more demanding threshold of showing a comparator in the EPA context, claims for sex-based wage discrimination can be brought under Title VII even though no member of the opposite sex holds an equal but higher paying job. At the same time, the Bennett Amendment to Title VII incorporates the EPA's affirmative defenses into Title VII's prohibition of gender-based wage discrimination.

*Kovacevich v. Kent State University,* 224 F.3d 806, 828 (6th Cir. 2000) (internal citations and quotations omitted).  Given that the Bennett Amendment to Title VII incorporates the EPA's affirmative

defenses, "[a]n employer may therefore avoid liability under a Title VII wage discrimination claim if it can establish one or more of the four affirmative defenses in the EPA." *Beck-Wilson*, 441 F.3d at 369 (citing *Washington County v. Gunther*, 452 U.S. 161, 167-71 (1981); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 251 (6th Cir. 1981)).

This Court determined that Plaintiff did not meet her prima facie case under the EPA, and even if she had, Defendant established the affirmative defense of "a factor other than sex." The same affirmative defense applies to Plaintiff's Title VII claim. Accordingly, Plaintiff's claim under Title VII also fails and Defendant is entitled to summary judgment on Plaintiff's claim under Title VII.

## C. Kentucky Civil Rights Act

Plaintiff's wage discrimination claim under the KCRA mirrors her claim under Title VII and must be dismissed for the same reasons. *See Kentucky Ctr. for the Arts v. Hanley*, 827 S.W.2d 697, 699 (Ky. Ct. App. 1991).

### IV. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

That Defendant's Motion for Summary Judgment [Record No. 29] shall be, and the same hereby is, **GRANTED**.

This the 24th day of February, 2010.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge